UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Robert Schwartz,  Case No. 10-71142-MBM
  Chapter 13
          Debtor.  Hon. Marci B. McIvor
_____/


**OPINION DENYING CREDITOR'S OBJECTION
TO DEBTOR'S PLAN ON GROUND OF ELIGIBILITY**

Creditor Pamela Liggett ("Creditor Liggett") objects to the confirmation of Debtor's Chapter 13 Plan on the grounds that Debtor is not eligible for chapter 13 relief under 11 U.S.C. § 109(e) because Debtor's debts exceed the unsecured debt limit of $360,475. For the reasons set forth below, this Court finds that Debtor's debts as of the Petition Date do not exceed the unsecured debt limit for a chapter 13 and, therefore, Debtor is eligible for relief under chapter 13.


I.

FACTUAL BACKGROUND

Robert Schwartz filed for divorce from Pamela Liggett in the Oakland County Circuit Court in 1999. A Judgment of Divorce was entered on November 20, 2000. In the Judgment of Divorce, the Court ordered, in part:

(1) all IRA and 401(k) plans of the parties to be divided equally, as of the date the accounts are transferred, including any gains or losses:

(2) Schwartz to pay Liggett spousal support in the amount of $6,818.00 per

> month, commencing upon the sale and closing of the marital home, until either Defendant's death, or ten years (120 payments); and

(3) upon the sale of the marital home, in the event that the proceeds following the sale are not sufficient to pay off the educational loans incurred for the benefit of the party's children, that the parties shall be equally responsible for the remaining educational debts.

In 2008, Debtor failed to make approximately three spousal support payments. In order to cure the arrearage, Debtor's payments to the Michigan Spousal Disbursement Unit ("MiSDU") were permanently increased from $6,818.00 to $7,184.00 per month.

In 2009 and 2010, the parties went to arbitration on three separate occasions and arbitration awards were issued on September 23, 2009, June 7, 2010, and August 3, 2010.

On October 8, 2010, Robert Schwartz ("Debtor") filed a Chapter 13 bankruptcy and filed his chapter 13 Plan. Debtor's Plan proposes to pay his creditors, including Creditor Liggett, 100% of the amounts owed over five years. The Debtor's Schedule E lists a domestic support obligation owing to the MiSDU, paid directly by a working wage order, in the amount of $7,184 monthly, and lists this obligation as "current". Schedule E lists Creditor Liggett as the recipient of the support obligation, for notice purposes only. The Debtor's Plan lists Creditor Liggett's entitlement to alimony as a class six priority unsecured claim of $7,184.50 and states that it is being paid via a wage order and is current. Debtor's plan provides for 100% payment of all unsecured claims.

Debtor's Schedule F lists $359,059.00 of general unsecured obligations,

2

including a commercial loan debt to Fifth Third Bank in the amount of $55,980.00, listed as contingent and unliquidated.

On November 17, 2010, the Oakland County Circuit Court Judge entered an Order Confirming Arbitration Awards. That Order states, in part:

> This matter came before the Arbitrator, Gil Gugni, who issued three (3) separate arbitration awards dated September 23, 2009 **[Exhibit 1]**, June 7, 2010 **[Exhibit 2]** and August 3, 2010 **[Exhibit 3]**:
>
> The Arbitration Awards attached hereto are hereby confirmed. As such:
>
> **1. Educational Debt**:
>
> Defendant [Creditor Liggett] owes Plaintiff [Debtor] $26,070.00, at times and on terms yet [sic] be determined, for educational debt.
>
> **2. Actual Attorney Fees owed to Defendant**:
>
> Plaintiff [Debtor] owes Defendant [Creditor Liggett] $15,473.25 in actual attorney fees.
>
> **3. Attorneys Fees for Fraud Claim**:
>
> Plaintiff [Debtor] owes Defendant [Creditor Liggett] $8,500.00.
>
> **4. Attorney Fees owed to Plaintiff**:
>
> Defendant [Creditor Liggett] owes Plaintiff [Debtor] $6,000.
>
> **5. Sanctions**
>
> Defendant's [Creditor Liggett] claim for sanctions is denied.
>
> **6. Educational Debt as of April 1, 2010**:
>
> Each party owes one-half of the $33,440.00 educational debt owing at April 1, 2010.

(Creditor's Exhibit D, emphasis in original). The net effect of the Order Confirming Arbitration Awards is that *Creditor Liggett owes Debtor* a total of $8,096.75.

On December 27, 2010, Creditor Liggett filed a proof of claim for $82,859.24. Creditor stated as the basis for her claim "divorce/arbitration awards," and alleged that $20,824.62 of this claim is entitled to priority. Specifically, the proof of claim is broken down as follows:

| | |
|---|---|
| Spousal Support Arrearage | $20,824.62 |
| One-half Interest IRA | $38,061.37 |
| The Second Arbitration Award | $15,473.25; |
| The Third Arbitration Award | <u>$8,500</u> |
| **Total** | $82,859.24 |

On December 27, 2010, Creditor Liggett, filed an Objection to Confirmation. Creditor Liggett objected to confirmation of Debtor's Plan on the following grounds:

(1) Creditor Liggett is not properly treated under § 1322(a)(2) which requires full payment for all priority creditors;

(2) the Plan improperly sets forth November 1, 2011 as the termination date for support payments when the actual termination date is January 2013; therefore, because the Plan anticipates increasing the Plan payments from $2,445 per month to $9,630 per month in November 2011, the Plan is not feasible;

(3) Debtor's Plan does not account for Creditor's Liggett's one-half interest in an IRA valued at $76,122.74 as of June 30, 2000, which would be an unsecured claim of Creditor's;

(4) Debtor's Plan provides for excessive living expenses, which reduces the amount of Debtor's income to fund his Plan; and

(5) Debtor is not eligible for chapter 13 relief under 11 U.S.C. § 109(e) because Debtor's debts exceed the unsecured debt limit of

$360,475.

The claims bar date was February 20, 2011.

On March 30, 2011, Debtor filed an objection to Creditor Liggett's proof of claim which listed $20,824.62 of priority unsecured debt and $62,034.62 of general unsecured debt. In Debtor's Objection to Claim of Pamela Liggett (Claim No. 14), Debtor objects to Creditor's proof of claim because *Creditor owes Debtor* a total of $8,096.75, as is set forth in the November 17, 2010 Order Confirming Arbitration Awards entered by the Circuit Court Judge, which incorporates three separate arbitration awards dated September 23, 2009, June 7, 2010, and August 3, 2010. In addition, Debtor acknowledges that Creditor Liggett is entitled to her one-half share of the subject IRA pursuant to the Judgment of Divorce, or $37,137.78. Debtor also acknowledges that there is an arrearage on his alimony obligation, but states that the arrearage has already been accounted for through his adjusted support payments. Debtor's support payments were increased from $6,818.00 to $7,184.50 per month.

On March 31, the Court held a hearing on the confirmation of Debtor's Plan of Reorganization. At the Confirmation Hearing, the Court: (1) ordered the parties to file briefs on the issue regarding Debtor's eligibility to be in a chapter 13 pursuant to § 109(e); (2) granted Creditor Pamela Liggett an extension to May 19, 2011 for filing a response to the Debtor's objection to her Proof of Claim; (3) granted Creditor Liggett an extension for filing a non-dischargeability complaint until May 19, 2011; (4) adjourned the hearing on the Objection to Proof of Claim No. 14 by Pamela Liggett to May 26, 2011; and (5) adjourned the Confirmation Hearing to May 12, 2011.

On May 12, 2011, the Court adjourned the hearing on Debtor's chapter 13

eligibility to June 2, 2011. The Court also adjourned the deadline for Creditor Liggett to file a nondischargeability complaint, and adjourned the hearing on Debtor's objection to Creditor Liggett's proof of claim.

With respect to Debtor's chapter 13 eligibility, Creditor Liggett argues Debtor failed to list all his unsecured debt and that had he listed all unsecured debts, his total debts would exceed the jurisdictional limit for chapter 13's set forth in 11 U.S.C. § 109(e).[1] Debtor responds that he completed his Schedules in good faith and, at the time the petition was filed, the amount Debtor owed was within the jurisdictional limits for a chapter 13.

II.

ANALYSIS

Under 11 U.S.C. § 109(e), a debtor is eligible for chapter 13 relief only if the unsecured debts that existed on the date he filed his petition are within the jurisdictional limit for chapter 13, that being $360,475. Section 109(e) states:

> (e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $360,475 and noncontingent, liquidated, secured debts of less than $1,081,400, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $360,475 and noncontingent, liquidated, secured debts of less than $1,081,400 may be a debtor under chapter 13 of this title.
> Courts have found that Chapter 13 eligibility is determined by the debtor's

---

[1] Creditor Liggett also argues that priority debts are unsecured debts under 11 U.S.C. § 109(e) and, therefore, should be included when determining the amount of debt for purposes of determining eligibility under chapter 13. Debtor does not dispute this allegation.

6

schedules unless the Court determines that the schedules were not filed in good faith. *Comprehensive Accounting Corp. V. Pearson (In re Pearson)*, 773 F.2d 751, 757 (6th Cir. 1985) ["Chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were filed in good faith."]; *DeJounghe v. Mender ( In re DeJounghe)*, 334 B.R. 760, 768 (1st Cir. BAP 2005). As long as a debtor's schedules are completed after the exercise of due diligence and are filed in good faith, the schedules will determine a debtor's eligibility for Chapter 13. *DeJounghe,* 334 B.R. 768 *citing In re Smith*, 325 B.R. 498, 502 (Bankr. D.N.H. 2005). It is within the Bankruptcy Court's discretion to determine debtors' eligibility based solely on the original schedules. *In re Pearson*, 773 F.2d 758; *In re Perkins,* 2009. WL 2983034 (Bankr. N.D. Ohio).

Creditor Liggett does not explicitly argue that Debtor's schedules were not filed in good faith. Rather, Creditor Liggett argues that Debtor omitted several unsecured debts on Schedule F, and then argues that if those debts had been included on Schedule F, Debtor's unsecured debt would exceed the dollar limitation imposed by 11 U.S.C. § 109(e). The Court notes that it is not required to inquire as to whether the unsecured debts exceed the limit, but instead, inquire into whether the debtor believed in good faith that he was eligible for Chapter 13 relief. *In re Mannor*, 175 B.R. 639, 641-42 (Bankr. E.D. Mich. 1994).

Creditor Liggett alleges that Debtor omitted five debts from his schedules. Those debts are as follows:

(1) a debt to Fifth Third Bank, which Creditor Liggett alleges is

7

> undisputed and non-contingent (approximately $55,000); Debtor listed this debt on Schedule F; however, he listed the debt as contingent and unliquidated;
>
> (2) Spousal support arrears of $20,824.62 (as of October 19, 2010);
>
> (3) The Second Arbitration Award of $15,473.25;
>
> (4) The Third Arbitration Award of $8,500; and
>
> (5) Amounts owed to Creditor Liggett for her share of Debtor's IRA (approximately $38,000).

While a creditor's characterization of debtor's unsecured debt is insufficient to prove ineligibility under 11 U.S.C. § 109(e), the Court will discuss each of Debtor's alleged omissions for purposes of determining whether Debtor's schedules were filed in good faith.

A. <u>Debt to Fifth Third Bank</u>:

On Debtor's Schedule F, Debtor listed an unsecured debt owing to Fifth Third Bank, marked 'contingent and unliquidated,' in the amount of $55,980.00. Debtor states that, at the time he filed his Schedules, he believed that his debt to Fifth Third Bank was contingent and unliquidated. Debtor had never borrowed money from Fifth Third Bank, but listed Fifth Third Bank on Schedule F because he received statements from Fifth Third Bank showing a balance on a commercial loan. (See Debtor's Exhibit C). Debtor was unclear as to the nature of this liability but thought it related to a business venture he had been involved in several years prior to filing for bankruptcy. Therefore, Debtor listed this debt on the Schedules as contingent and unliquidated. Debtor ultimately determined that this loan was originally obtained from *LaSalle Bank* over ten years ago,

8

on a one-year revolving basis, and that the obligation is in fact a liquidated amount.

Creditor Liggett argues that, on the date the Petition was filed, the debt to Fifth Third Bank was noncontingent and liquidated and, therefore, that debt should be included in calculating Debtor's total debt as of the Petition Date. Since Debtor has already included the liability in his total unsecured debt, notwithstanding the fact that Debtor listed the debt as contingent and unliquidated, the Court sees no merit in Creditor Liggett's argument.

However, this Court also finds that Debtor could have properly excluded the liability to Fifth Third Bank in the calculation of unsecured debt for purposes of eligibility under § 109(e). Section 109(e) only requires a debtor to include noncontingent liquidated debts when determining total debt for purposes of chapter 13 eligibility. This Court finds Debtor's explanation concerning why he listed the debt to Fifth Third Bank as contingent and unliquidated satisfactory, and consistent with a good faith completion of his Schedules. Had Debtor excluded the debt to Fifth Third Bank for eligibility purposes, Debtor's unsecured debt would decrease from $359,059.00 to $304,059.00, well below the eligibility requirements of 11 U.S.C. § 109(e).

B. <u>Spousal Support Arrearage</u>

Creditor Liggett also argues that Debtor failed to list a spousal support arrearage of $20,824.62. The Court finds that Debtor is current on his payments. Debtor's spousal support payments have been increased by $366.50 per month to roll the arrearage into ongoing payments. Debtor is current on these increased support payments in the amount of $7,184.50 per month.

This Court finds that the increased wage order replaces any debt owed to Creditor Liggett so long as Debtor continues making those payments. Therefore, Debtor was not required to list a support arrearage since the arrearage is being paid through a wage order, and Debtor is current on his payments.

### C. Second and Third Arbitration Awards

Creditor Liggett argues that Debtor was required to schedule amounts awarded to her in a Second and Third Arbitration Award. Creditor Liggett's argument is totally lacking in merit. On November 17, 2010, the Oakland County Circuit Court entered an Order Confirming Arbitration Awards. The Order superceded all prior arbitration awards. The net effect of the Order entered on November 17, 2010 is that Creditor Liggett owes Debtor money, not the other way around. Because the arbitration awards do not create an obligation from Debtor to Creditor Liggett, this Court finds that there was nothing for Debtor to schedule with regards to the arbitration award.

### D. IRA

Creditor Liggett also argues that Debtor owes her $38,000 pursuant to the Judgment of Divorce as her share of an IRA owned by Debtor. The Judgment of Divorce states:

> IT IS FURTHER ORDERED AND ADJUDGED that any IRA or 401K Plans shall be divided equally by and between the parties by way of a Qualified Domestic Relations Order (QDRO) if necessary. The costs of preparing the QDRO's necessary to effectuate this transfer shall be shared equally by and between the parties. In the event there are any gains or losses on any of these accounts from date of entry of the Judgment until such time as the accounts are transferred, said gains or

10

losses shall be equally split between the parties, as well.

(Judgment of Divorce, p. 3). Neither Debtor nor Creditor Liggett presented any documents regarding this provision of the Judgment of Divorce. Creditor Liggett argues in her pleadings that Debtor has an IRA account which remains subject to the Judgment of Divorce, and that the amount owed by Debtor is a liability which should have been listed on Schedule F. Creditor Liggett presents no documentation to support her allegation that as of the date Debtor filed his Petition, October 8, 2010, Debtor had a liability to Creditor Liggett arising out of the Judgment of Divorce. None of the arbitration awards mention a balance owed on an IRA. In reviewing the pleadings, the Court is left with the general impression that the parties have been disputing their respective obligations for ten years. Given this history, the Court finds that Debtor's omission of an obligation to Creditor Liggett on Schedule F was an honest error.

In his objection to Creditor Liggett's claim, filed on March 30, 2011, Debtor acknowledged a liability of approximately $38,000 to Creditor Liggett for her share of an IRA. Debtor's acknowledgment of the liability, several months into his case, does not persuade the Court that Debtor is ineligible for relief under Chapter 13 of the Bankruptcy Code. Courts evaluate eligibility under 11 U.S.C. § 109(e) on the date of filing, not several months into the case, when discovery and negotiation may change the nature and amount of a claim. As the Sixth Circuit stated in *Comprehensive Accounting Corp. V. Pearson (In re Pearson)*, 773 F.2d 751, 756 (6th Cir. 1985):

> Congress did not intend that a determination of Chapter 13 eligibility be delayed until the case has substantially progressed. Post-petition events should not be considered because they often occur 'after the debtor and other parties

11

> in interest have expended relatively large amounts of time,
> money, and effort toward the debtor's reorganization.'

*Pearson,* 773 F.2d at 756 (citation omitted).

Based on the multiple arbitration awards and the ten year history of Debtor and Creditor Liggett's divorce, Debtor's uncertainty on the date of filing as to what amounts he owed Creditor Liggett does not demonstrate a lack of good faith.

III.

CONCLUSION

After reviewing all the pleadings filed by the parties, the Court concludes that Debtor's schedules were filed in good faith, and therefore Debtor's eligibility for relief under Chapter 13 of the Bankruptcy Code is controlled by the amounts set forth in those schedules. Debtor's Schedule F reflects unsecured debts of $359,050, including a liability Debtor need not have included for purposes of eligibility under 11 U.S.C. § 109(e). (See § II (A) above.) Since that figure is below the debt limit of $360,475 set by 11 U.S.C. § 109(e), Debtor is eligible for relief under Chapter 13 of the Bankruptcy Code.

It must be noted that Debtor's plan proposes to pay all allowed unsecured claims, including Creditor Liggett's claim, in full. While the proposed dividend to unsecured creditors is not generally a factor to be considered by the Court in evaluating eligibility under 11 U.S.C. § 109(e), in this case, where the amount of Debtor's unsecured debt is less than the jurisdictional amount, the proposed plan supports the Court's conclusion that Debtor and creditors benefit from Debtor remaining in a Chapter 13 proceeding.

Creditor Liggett's objection to confirmation of Debtor's plan on the ground that

Debtor is ineligible for relief under 11 U.S.C. § 109(e), is DENIED.

The hearing on confirmation of Debtor's plan is scheduled for Thursday, June 30, 2011 at 11:00 a.m. To the extent that any issues remain with regard to Debtor's objection to Creditor Liggett's claim, a hearing will be held on the objection on June 30, 2011 at 11:00 a.m.

Signed on June 02, 2011

```
                    /s/ Marci B. McIvor
                    Marci B. McIvor
                    United States Bankruptcy Judge
```