IN RE:

ROBERT L. SCHWARTZ,            Case No. 10-71142
                                         Chapter 13
           Debtor.                    Hon. Marci B. McIvor
_____/

## OPINION DETERMINING THE AMOUNT OF CREDITOR'S CLAIM NO. 22

This Court has previously determined that Creditor Pamela Liggett's sole claim against Debtor Robert Schwartz is a claim for fifty-percent of an IRA awarded to Liggett pursuant to a Judgment of Divorce. The issue reached by this Opinion is the *amount* of Liggett's claim. For the reasons set forth below, this Court finds that Liggett has an unsecured claim against Schwartz in the amount of $60,485.10.

I.

STATEMENT OF FACTS

A.     General Background

Robert Schwartz filed for divorce from Pamela Liggett in the Oakland County Circuit Court in 1999. A Judgment of Divorce was entered on November 20, 2000. The Judgment of Divorce states that all IRA and 401(k) plans of the parties are to be divided equally, as of the date the accounts are transferred, including any gains or losses accrued as of the actual transfer date. Specifically, the Judgment of Divorce states:

**PROPERTY SETTLEMENT**

\*     \*     \*

**IT IS FURTHER ORDERED AND ADJUDGED** that any IRA or
401K Plans shall be divided equally by and between the parties by way of

> a Qualified Domestic Relations Order (QDRO) if necessary. The costs of
> preparing the QDRO's necessary to effectuate this transfer shall be
> shared equally by and between the parties. In the event there are any
> gains or losses on any of these accounts from date of entry of the
> Judgment until such time as the accounts are transferred, said gains or
> losses shall be equally split between the parties, as well.

(Judgment of Divorce, Case No. 10-71142, Docket No. 71, Ex. A, pp. 2-3).

In July, 2003, Liggett's divorce counsel sent correspondence to Schwartz's divorce counsel, directing Schwartz to execute five Qualified Domestic Relations Orders, ("QDRO's") for entry in the divorce proceeding pursuant to the Judgment of Divorce. The QDRO's were prepared by Liggett's counsel with regard to the following IRA accounts and 401(k) plans to be shared equally between the parties:

1. Howard & Howard Attorneys, P.C. 401(k) Plan;
2. Howard & Howard Attorneys, P.C. Pension Plan for Employees;
3. Dykema Gossett PLLC Savings and Investment Plan;
4. Dykema Gossett PLLC Retirement Plan; and
5. Michcon Employees' Retirement Plan.

(Adv. Case. No. 11-5830, Docket No. 16, p. 40).

On December 1, 2003, the Michcon Employees' Retirement Plan QDRO was entered in the Oakland County Circuit Court (Adv. Case. No. 11-5830, Docket No. 16, p. 41). On December 2, 2003, the executed QDRO's for the following accounts were entered in the Oakland County Circuit Court: Howard & Howard Attorneys, P.C. 401(k) Plan (Adv. Case. No. 11-5830, Docket No. 16, p. 46), Howard & Howard Attorneys, P.C. Pension Plan for Employees (Adv. Case. No. 11-5830, Docket No. 16, p. 51), Dykema Gossett PLLC Savings and Investment Plan Adv. Case. No. 11-5830, Docket No. 16, p.

2

56), and Dykema Gossett PLLC Retirement Plan Adv. Case. No. 11-5830, Docket No. 16, p. 61).

On January 6, 2005, a QDRO with regard to the DTE Energy Company Retirement Plan, Liggett's former employer, was entered in the Oakland County Circuit Court (Adv. Case. No. 11-5830, Docket No. 16, p. 66). The DTE Energy Company Retirement Plan was not listed in the correspondence sent by Liggett's divorce counsel in July 2003. (Adv. Case. No. 11-5830, Docket No. 16, p. 40).

As of January 6, 2005, all of Liggett's and Schwartz's IRA and 401(k) accounts were all subject to QDROs, except for one of Schwartz's IRAs, which was held at Independence One Brokerage Services ("Independence One"). The Independence One IRA was liquidated by Schwartz in March of 2009. The portion of this IRA to which Liggett was entitled by the Judgment of Divorce was never transferred to Liggett. The parties agree that Liggett is entitled to fifty-percent of the Independence One IRA. It is the value of this IRA which is the subject of this Opinion.

B.  Independence One IRA

The account balances for the Independence One IRA account in the year just preceding and following the November 2000 entry of the Judgment of Divorce are as follows:

| Statement Period | Total Account Assets |
| --- | --- |
| May 27, 2000 – June 30, 2000 | $76,122.44 |
| September 30, 2000 - December 30, 2000 | $77,125.78 |
| December 30, 2000 – March 30, 2001 | $72,672.44 |

3

June 30, 2001 – September 28, 2001          $68,248.32

September 29, 2001 – October 26, 2001       $0.00 (due to forced Bank Merger, *infra*)

(Adv. Proc. 11-5830, Docket No. 16, pp. 71 - 74; Case No. 10-71142, Docket No. 132, p. 16). The statements show that there were no withdrawals made from the Independence One IRA account at any point in time following the entry of the Judgment of Divorce. Changes in the account balances were due to the fluctuation of the market.

On September 5, 2001, Schwartz received a statement from Independence One, informing him that the brokerage servicer's parent company, Michigan National Bank, would be merging with Standard Federal Bank, N. A., and that the account would now be operated by Wealth Management Securities Services, a division of ABN AMRO. The correspondence states,

> Michigan National Bank and Standard Federal Bank are joining together– and starting this October, will become Standard Federal Bank, N.A. As a result of this merger, your Independence One Brokerage Services, Inc. ("IOSB") account will become part of Wealth Management Securities Services, a division of ABN AMRO Financial Services, Inc. While we operate under a new name, your brokerage account will continue to be serviced by your current Investment Consultant who will become a part of Wealth Management Securities Services.

(Case No. 10-71142, Docket No. 132, p. 20).

Shortly thereafter, the Independence One IRA account automatically merged into a new account with Wealth Management Securities Services. The closing statement from Independence One Bank and the opening statement from Wealth Management Securities shows the balance is virtually unchanged. (Case No. 10-71142, Docket No. 132, p. 19 and p. 21).

From October 26, 2001 through May 31, 2004, the former Independence One

4

IRA funds remained in the Wealth Management Securities account. Statements verify that no additions to the account were ever made and, likewise, no amounts were withdrawn. The initial account balance in October 2001 at Wealth Management Securities was $68,857.00 and the account balance for the period ending May 31, 2004 was $80,635.48. (Case No. 10-71142, Docket No. 132, p. 21-31).

On May 5, 2004, Robert Schwartz transferred the subject Independence One IRA funds to UBS. (Case No. 10-71142, Docket No. 133, p. 1, 2). The account transfer form indicated that no assets were liquidated as part of the transfer. (*Id.*)

In October 2004, Schwartz opened a Fifth Third Bank IRA. This IRA was funded with Schwartz's share of his Howard & Howard Pension Fund which had been awarded to him in the Judgment of Divorce. Schwartz deposited $69,302.67 into the IRA. (Case No. 10-71142, Docket No. 133, p. 3). Sometime between October 1, 2005 and November 30, 2005, Schwartz rolled $73,866.12 from his Fifth Third account into the UBS account holding the subject IRA. (Case No. 10-71142, Docket No. 133, p. 9, 19). Prior to the rollover of funds from Fifth Third Bank to UBS, the UBS account held $95,535.79. After the funds were rolled over, the UBS account balance was $169,193.73. (Case No. 10-71142, Docket No. 133, p. 19). Accordingly, 56% of the UBS account funds were attributable to the Independence One IRA account assets and 44% of the UBS account funds were attributable to the Schwartz's share of his Howard & Howard Pension Fund.

From November 30th, 2005 to March 31st, 2009, Schwartz neither added nor withdrew funds from the UBS account. (Case No. 10-71142, Docket No. 133, p. 19-26; Docket No. 134, p. 1-26). Due to market fluctuations, the UBS account fluctuated from

5

a high value of $240,371.96 in October 31st, 2007 to a low value of $126,658.65 on March 19, 2009. (Case No. 10-71142, Docket No. 146, Ex C).

On March 19, 2009, Schwartz closed out his UBS account. (Case No. 10-71142, Docket No. 146, Ex. C). Schwartz also withdrew funds from some of his other IRA accounts in 2009. The total amount withdrawn by Schwartz from his various accounts (including the UBS account) in 2009 was $241,454.00. (Case No. 10-71142, Docket No. 1, Statement of Financial Affairs).

On October 8, 2010, Robert Schwartz ("Debtor") filed a Chapter 13 bankruptcy. (Case No. 10-71142, Docket No. 1). Schwartz's bankruptcy Petition lists $359,059.00 in unsecured non-priority claims on Schedule F. Schwartz's Schedule F does not include Liggett's claim.

On October 8, 2010, Schwartz also filed his Chapter 13 Plan of Reorganization. (Case No. 10-71142, Docket No. 7). Schwartz's Plan is a sixty-month plan, which provides that Schwartz will fund the Plan with twenty-one payments in the amount of $2,445.00 and thirty-nine payments in the amount of $9,630.00, for a total of $426,915.00. The Worksheet attached to Schwartz's Plan indicates that the Plan will have $395,315.00 available to pay his $359,059.00 in unsecured claims, resulting in a one-hundred percent payout to his unsecured creditors.

On December 27, 2010, Schwartz's ex-wife, Pamela Liggett, filed a proof of claim (Claim No. 14) for $82,859.24. Liggett stated as the basis for her claim "divorce/arbitration awards," and alleged that $20,824.62 of this claim was entitled to priority. Specifically, Liggett's proof of claim stated the following amounts:

    Spousal Support Arrearage    $20,824.62

6

| | |
|---|---|
| One-half Interest IRA | $38,061.37 |
| The Second Arbitration Award | $15,473.25; |
| The Third Arbitration Award | <u>$8,500</u> |
| **Total** | $82,859.24 |

On December 27, 2010, Liggett filed an objection to confirmation of Schwartz's Plan of Reorganization based on, among other things, Liggett's claim that Schwartz was ineligible for Chapter 13 relief under 11 U.S.C. § 109(e) because his unsecured debt exceeded the unsecured debt limit.

On March 30, 2011, Schwartz filed an Objection to Liggett's Proof of Claim No. 14.

On June 2, 2011, this Court issued an Opinion denying Liggett's objection to Schwartz's Plan on grounds of eligibility.

On June 15, 2011, Liggett filed a second proof of claim, Claim No. 22, in the amount of $353,973.05 for "divorce/conversion". Claim No. 22 indicates that it amends Claim No. 14.

On June 15, 2011, Liggett filed an adversary proceeding against Schwartz. (Adv. Case. No. 11-5830). The Adversary Complaint alleged that Schwartz failed to disclose all of his IRAs to Liggett and that the failure to disclose creates a nondischargeable obligation under 11 U.S.C. §§ 523(a)(2), (4) and (5). The Complaint sought a nondischargeable judgment in an unspecified amount.

On June 30, 2011, the Court held a hearing on Schwartz's objection to Liggett's Claim No. 14. At the conclusion of the hearing, the Court disallowed the portion of claim relating to the spousal support arrearage and the second and third arbitration awards,

7

finding no evidence that Schwartz owed Liggett for a support arrearage or a balance owed on an arbitration award. The Court also allowed the claim for Liggett's fifty-percent interest in the Independence One IRA. The parties were permitted to submit statements verifying their position as to the appropriate value of the subject IRA for purposes of determining Liggett's allowed proof of claim.

On July 8, 2011, this Court entered an Order Confirming Debtor's Plan of Reorganization.[1]

On July 13, 2011, Schwartz filed an objection to Liggett's Claim No. 22.

On July 15, 2011, Schwartz filed a motion for summary judgment and a motion to dismiss the adversary proceeding.

On July 18, 2011, this Court entered an Order Granting Debtor's Objection to Claim of Pamela Liggett (Claim No. 14).[2] The Order also allowed Liggett's claim in the amount of $38,061.37 (fifty-percent of the portion of the UBS account attributable to the rollover of the Independence One IRA as of December 31, 2008)[3]. This Order still left open the resolution of Claim No. 22, as it was unclear what portion of Claim No. 22 related to the Independence One IRA.

On July 20, 2011, Liggett filed a Response to the Motion to Dismiss the adversary proceeding.

---

[1] This Order Confirming Plan was appealed to the United States District Court on July 12, 2011.

[2] This Order was appealed to the United States District Court on July 20, 2011.

[3] At the time the July 18, 2011 Order was issued, the bank statement for the period ending in December 2008 was the closest bank statement provided to the actual March 19, 2009 liquidation date.

On September 13, 2011, this Court issued an Opinion and Order granting Schwartz's motion for summary judgment with respect to § 523(a)(4) and § 523(a)(5) and granting Schwartz's motion to dismiss the adversary proceeding under § 523(a)(2)(A).[4] The Court found that Schwartz's obligation to pay Liggett one-half of an IRA pursuant to the parties' Judgment of Divorce was a contractual obligation and that, while Schwartz may have breached that contract, Schwartz had not committed fraud, larceny, or embezzlement as defined by §§ 523(a)(2) and (a)(4) of the Bankruptcy Code.

On September 20, 2011, Liggett provided the following breakdown of her Claim No. 22, in the amount of $353,973.05:

| | |
|---|---|
| One-Half of IRA | Amount Unknown |
| Tax Consequences | Amount Unknown |
| Attorney Fee | Amount Unknown |
| Trebled Damages | Amount Unknown |

(Case No. 10-71142, Docket No. 130). Liggett stated that she was making the following "Assumptions":

1. $240,000.00 cashed IRA results in distribution of $120,000.00

2. Conversion exists and amounts are trebled $360,000.00

3. Attorney fees awarded, amounts set forth approximate $ 20,000.00

On September 22, 2011, the Court held a hearing on Schwartz's objection to Claim No. 22. At the hearing, Liggett argued that she was entitled to half of the entire

---

[4]This Order was appealed to the United States District Court on September 13, 2011.

amount in the UBS account on the date it was liquidated, which included the funds that were rolled-over from the Howard & Howard Pension Fund. This Court rejected that argument, finding that Liggett is only entitled to half of the funds which were attributable to the Independence One IRA ($38,617.06)[5] together with some rate of return from March 31, 2009 to the present date. (Case No. 10-71142, Transcript, Hg September 22, 2011, Docket No. 142, p. 37). The Court also found that Liggett had failed to set forth any facts or documents which support her claims for damages for conversion, attorney fees, and tax consequences. (*Id.* at p. 39). The Court reduced Claim No. 22 (which replaces Claim No. 14) to half of the Independence One IRA. The Court requested that the parties brief the issue of how to determine the value of Liggett's 50% share of the Independence One IRA, given that the Independence One IRA had been liquidated prior to payment of Liggett's share.

II.

ANALYSIS

The issue before the Court is how to value Liggett's allowed claim for 50% of an IRA which no longer exists. Given that Liggett's half of the Independence One IRA was liquidated before it was transferred, this Court must first determine the date of "transfer"

---

[5]This Court's order entered on July 18, 2011 fixed Liggett's interest in the Independence One IRA at $38,061.31 (50% of the UBS account attributable to the Independence One IRA). That amount was calculated as of December 2008. The parties subsequently provided a statement for the UBS account for March 2009, the month in which the account was liquidated. That statement showed that Liggett's share of the Independence One IRA would have been $38,617.06, had she been paid when the account was liquidated.

10

for purposes of valuing Liggett's claim. Once the Court has fixed the "transfer" date, this Court must identify the correct methodology for determining the rate of return on Liggett's share of the IRA between March 2009 and the date of "transfer", and determine the value of the IRA based on that rate of return. Once the Court sets the date of "transfer" and the amount owed to Liggett on the date of "transfer", this Court must determine whether Liggett is entitled to interest on that amount.

A.  Date of Transfer

The parties seem to agree that the date of confirmation of Schwartz's Chapter 13 Plan of Reorganization, July 8, 2011, is the date the Court should use as the "transfer" date of the Independence One IRA. While the parties do not cite any authority for picking the Confirmation Date as the relevant date for valuing the claim, presumably the parties are relying on 11 U.S.C. § 1325(a)(4) which values the amount to be paid on unsecured claims as of the "effective date of the plan." In a Chapter 13 case, there is a split in authority on whether the effective date of the plan is the petition date or the date the plan is confirmed. *See In re Gibson*, 415 B.R. 735, 738 (D. Ariz. 2009)("'effective date of the plan,' as it applies to § 1324(a)(4), means the date of order confirming plan, unless plan itself defines another date."); *But see, In re Fleishman*, 372 B.R. 64, 71 (Bankr. D. Or. 2007)(for purposes of § 1325(a)(4), the petition date is the "effective date of the plan".) Because the parties in this case have agreed that the Confirmation Date, July 8, 2011, is the appropriate date for fixing the value of Liggett's share of the IRA, this Court will value the amount of Liggett's claim on that date.

11

B.  Amount of Liggett's Claim

The Court must next identify the correct methodology for determining the rate of return on Liggett's share of the Independence One IRA funds between March 19, 2009 and July 8, 2011 and determine the value of the IRA funds based on that rate of return. Because Schwartz liquidated the UBS account, which contained the rollover of the Independence One IRA funds, this Court must estimate a rate of return the IRA funds would have received had they remained in the UBS account.

Schwartz proposes that the Court determine Liggett's claim by the following method. First, Schwartz provides the name of the funds in the UBS account and the number of shares in each fund on the date the UBS account was liquidated, March 19, 2009. Next, Schwartz provides the value of the shares in the UBS account in March 19, 2009, when Schwartz liquidated that account, that amount being $126,658.65.[6] Next, Schwartz takes the value of those same funds on July 8, 2011, that amount being $216,018.22. Then, based on this Court's prior orders, because the rollover of the Independence One IRA accounted for 56% of the funds in the UBS account, and Liggett

---

[6]In March 2009, Schwartz's UBS account consisted of 6 separate funds. The investment amounts in the various funds as of March, 2009 are as follows:

| Fund | Value |
|---|---|
| AMCAP Fund | $17,715.73 |
| Small Cap World Fund | $13,313.88 |
| Capital World Growth & Income Fund | $19,614.59 |
| Euro Pacific Growth Fund | $20,415.68 |
| Growth Fund of America | $29,857.63 |
| Investment Company of America | $25,741.14 |

Total: $126,658.65

(Case No. 10-71142, Docket No. 146, p. 14).

is entitled to 50% of the amounts attributable to the Independence One IRA, Schwartz asserts that Liggett is entitled to a claim in the amount of $60,485.10 (56% of $216,018.22 is $120,970.20; 50% of $120,970.20 is $60,485.10).

The following Table summarizes the number of shares held in the account for each fund, the per-share value, and the total value of each fund as of March 19, 2009 and on the Confirmation Date, July 8, 2011:

| Fund | No. Of Shares On 3/19/2009 | Price of Shares On 3/19/2009 | Value of Fund | Price of Shares on 7/8/2011 | Projected Value of Fund on 7/8/2011 (date of transfer |
|---|---|---|---|---|---|
| AMCAP | 1,576.133 | $11.24 | $17,715.73 | $20.28 | $31,963.98 |
| SmallCap | 702.209 | $18.96 | $13,313.88 | $40.62 | $28,523.73 |
| Capital World Growth | 831.127 | $23.60 | $19,614.59 | $37.10 | $30,834.81 |
| Euro Pacific | 796.865 | $25.62 | $20,415.68 | $43.31 | $34,536.13 |
| Growth Fund | 1,539.847 | $19.39 | $29,857.63 | $32.39 | $49,875.64 |
| Investment Co. Of America | 1,370.668 | $18.78 | $25,741.14 | $29.39 | $40,283.93 |
| TOTALS | | | $126,658.65 | | $216,018.22 |

(Case No. 10-71142, Docket No. 146, p. 14-26.) As noted above, Schwartz argues that Liggett is entitled to 50% of 56% of $216,018.22.

Liggett argues that this Court should calculate her claim in some other manner than that proposed by Schwartz. However, Liggett's preferred method is not clear to the Court and, in any case, Liggett concludes that her claim at confirmation should be valued at $60,259.20, $225.90 less than the amount proposed by Schwartz.

This Court finds that the method proposed by Schwartz for calculating Liggett's

13

claim is logical and supported by prior orders of this Court. The Court finds that the value of Liggett's claim for her 50% share of the Independence One IRA is $60,485.10. The claim is a general unsecured claim.

C.  Interest

The last question before this Court is whether Liggett is entitled to interest on her unsecured claim. There is no provision in the Bankruptcy Code which provides for the payment of interest on general unsecured claims. In a Chapter 13 case, a debtor's plan must provide that the amount paid on an unsecured claim will exceed the amount that would be paid on the claim if the debtor's assets were liquidated. 11 U.S.C. § 1325(a)(4).[7] In addition, if a creditor objects to confirmation (which Liggett did), a plan must provide that the debtor is committing all of his projected disposable income to the Plan. 11 U.S.C. § 1325(b)(1)(B).[8]

---

[7] Section 1325(a)(4) states:

> (a) Except as provided in subsection (b), the court shall confirm a plan if–
>
> *   *   *
>
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

[8] Section 1325(b)(1)(B) states:

> *   *   *
>
> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–

14

In this case, the Court confirmed Schwartz's Plan on July 8, 2011 (over Liggett's objection). In confirming the Plan, the Court found (while not explicitly stating on the record) that Schwartz's Plan complied with 11 U.S.C. § 1325(a)(4) and § 1325(b)(1)(B). Schwartz's unsecured creditors are receiving far more than they would if his assets were liquidated. Schwartz's Schedule F lists $359,059.00 in unsecured claims, not including Liggett's claim which had not been determined on the date Schwartz filed for bankruptcy. The liquidation analysis attached to Schwartz's Chapter 13 Plan shows that his assets, if liquidated, would generate $8,621.00 while Schwartz's Plan proposes to pay a total distribution to unsecured creditors of $395,315.00. (See Worksheet attached to Schwartz's Plan). In other words, unsecured creditors are receiving far more under the Chapter 13 Plan than they would receive through a Chapter 7 liquidation. It is also clear from Schwartz's Schedules that he is committing all of his projected disposable income to the Plan. Now that the Court has determined the amount of Liggett's claim ($60,485.10), when that amount is included in Schwartz's unsecured debt, Schwartz's unsecured debt totals $419,544.10. Since his unsecured debt exceeds the projected disposable income to be paid into the Plan, no interest will be paid on any unsecured claim. Therefore, this Court finds that Liggett is not entitled

---

    \*   \*   \*
(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

to interest on her claim.

III.

<u>CONCLUSION</u>

For the reasons set forth above, this Court finds that Pamela Liggett has an allowed unsecured Claim No. 22 in the amount of $60,485.10. Claim No. 14 is disallowed in its entirety.

Signed on January 30, 2012

                                       /s/ Marci B. McIvor
                                       Marci B. McIvor
                                       United States Bankruptcy Judge